EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Asociación de Condóminos de la Torre Médica HIMA San Pablo<br><br>Recurrida<br><br>v.<br><br>Atlantis Health Care Group<br><br>Peticionaria | Certiorari<br><br>2018 TSPR 22<br><br>199 ____ |
| --- | --- |

Número del Caso: CC-2015-763

Fecha: 15 de febrero de 2018

Tribunal de Apelaciones:

    Región Judicial de Fajardo

Abogados de la parte Peticionaria:

    Lcdo. Luis E. González Ramos
    Lcda. Sylvia González González

Abogados de la parte Recurrida:

    Lcdo. Ricardo Prieto García
    Lcdo. Enrique Ramos Santiago

Materia: Obligaciones y Contratos: Requisito de la intención de extinguir la obligación para que se constituya la figura de pago por tercero.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Condóminos de la
Torre Médica HIMA San Pablo

      Recurrida

                          CC-2015-763     Certiorari
      v.

Atlantis Health Care Group

      Peticionaria

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 15 de febrero de 2018.

El recurso de epígrafe nos presenta la oportunidad de abordar una figura del Derecho Civil que ha sido estudiada en contadas ocasiones a través de la jurisprudencia de este Tribunal: el pago por tercero. Ante ese ambiente desértico en torno a dicha figura, conviene repasar sus contornos y su alcance.

En detalle, corresponde que evaluemos si el Tribunal de Primera Instancia y el Tribunal de Apelaciones erraron al concluir que en el caso de referencia procedía la acción de cobro de dinero en virtud de la figura del pago por tercero.

I

El 9 de octubre de 2012, la Asociación de Condóminos de la Torre Médica HIMA San Pablo de Fajardo (Asociación) presentó una demanda de cobro de dinero en contra de la corporación Atlantis Health Care Group (Puerto Rico), Inc. (Atlantis).[1] En específico, indicó que Atlantis operaba uno de los establecimientos en la mencionada torre médica; que en mayo de 2012 se le envió a Atlantis una carta de cobro; que la Asociación pagó $151,855 a la Autoridad de Acueductos y Alcantarillados (AAA) por el servicio de agua, cantidad que le correspondía pagar a Atlantis.[2] Por último, la Asociación manifestó que el pago realizado constituyó un pago por tercero, ante lo cual tiene derecho a reclamar lo pagado y esto nada tiene que ver con el plan de pago realizado entre Atlantis y la AAA. Así pues, la Asociación solicitó que se declarara "con lugar" su demanda.

Ante esto, Atlantis contestó la demanda el 19 de octubre de 2012 y adujo que la Asociación ya había sido compensada por la totalidad de la "alegada deuda", ello mediante un crédito que le concedió la AAA.[3] Añadió que

---

[1] Valga mencionar que a través del expediente del caso, incluso en la Sentencia emitida por el Tribunal de Primera Instancia, se nombra indistintamente la corporación como Atlantic o Atlantis. No obstante, para fines de aclarar el nombre correcto de la corporación de la que se trata, tomamos conocimiento judicial de que se trata de Atlantis, registrada como una corporación doméstica. Véase https://prcorpfiling.f1hst.com/CorpInfo/CorporationInfo.aspx (última visita, 13 de febrero de 2018).

[2] *Demanda*, Apéndice de la Solicitud de *certiorari*, págs. 60-61.

[3] *Contestación a la Demanda*, Apéndice de la Solicitud de *certiorari*, pág. 62.

estaba pagando a la AAA la cantidad que le reclama la Asociación, por lo que "[a]l hacerse responsable del pago de dicha suma a la [AAA], la parte demandada pagó a la demandante la deuda reclamada, toda vez que ahora la [Asociación] tiene un crédito con la [AAA] para el consumo de agua hasta el monto total de la deuda reclamada".[4] Atlantis enfatizó que si pagaba a la Asociación la cantidad que ésta reclamaba, entonces estaría pagando dos veces la misma deuda.[5]

En el *Informe de Conferencia con antelación a juicio* presentado el 18 de marzo de 2014, se incluyó entre las estipulaciones de las partes que "la Junta de Condóminos de la Torre Médica HIMA San Pablo pagó a la AAA $151,855.00 por consumo [de] Atlantis".[6]

Ahora bien, conforme le fue solicitado por Atlantis, el 26 de marzo de 2014 (notificada el 30 de abril de 2014), el foro de instancia emitió una Orden para que la AAA produjera ciertos documentos[7] y le apercibió de su deber de cumplir con la Orden.

---

[4] *Contestación a la Demanda*, Apéndice de la Solicitud de *certiorari*, pág. 63. Véase, además, *Acuerdo de plan de pago*, Apéndice de la Solicitud de *certiorari*, págs. 130-131.

[5] *Contestación a la Demanda*, Apéndice de la Solicitud de *certiorari*, pág. 63.

[6] *Informe de Conferencia con antelación a juicio*, Apéndice de la Solicitud de *certiorari*, pág. 67.

[7] La Orden emitida por el Tribunal de Primera Instancia lee así:

Se ordena a la Autoridad de Acueductos y Alcantarillados a poner a disposición de las partes, por conducto de sus representantes legales lo siguiente:

Ante el incumplimiento de la AAA con la Orden del foro de instancia, Atlantis solicitó la conversión del señalamiento de la vista en su fondo pautada para el 13 de noviembre de 2014. Indicó que los abogados de las partes y los funcionarios designados por la AAA solo se pudieron reunir en 2 ocasiones y la AAA produjo solamente el Informe de consumo de Atlantis y una copia de la Certificación sobre el crédito concedido a favor de la Asociación. Atlantis añadió que la AAA le había informado en una reunión que los datos que conforman el Informe de

---

1. Facturación enviada por la AAA a la Asociación Condóminos Torre HIMA San Pablo de Fajardo entre Marzo del 2004 y Noviembre del 2011.

2. Facturación enviada por la AAA al Centro Renal de Fajardo, propiedad de Atlantis Healthcare Group, PR, Inc., entre Marzo del 2004 y Noviembre del 2011.

3. Pagos recibidos de la Asociación Condóminos Torre HIMA San Pablo de Fajardo entre Marzo del 2004 y Noviembre del 2011.

4. Pagos recibidos de Atlantis Healthcare Group, PR, Inc., entre Marzo del 2004 y Noviembre del 2011.

5. Documentos generados por la AAA respecto del contador de la Asociación Condóminos Torre HIMA San Pablo de Fajardo a partir de Marzo del 2004, incluyendo acuerdos de pago, créditos y débitos.

6. Cualquier otro documento generado por la AAA respecto del contador del Centro Renal de Fajardo, propiedad de Atlantis Healthcare Group, PR, Inc., a partir de Marzo del 2004, incluyendo pero sin limitarse a acuerdos de pago, créditos y débitos.

Estos documentos deberán ponerse a disposición de los abogados de las partes dentro de los treinta (30) días siguientes al Diligenciamiento de esta Orden. Se apercibe a los abogados de las partes que deben de coordinar con la AAA para el examen de los documentos cuya producción aquí se Ordena dentro de los 20 días de que la AAA informe que tiene los mismos disponibles para su examen.

Véase *Orden del 26 de marzo de 2014*, Apéndice de la Solicitud de *certiorari*, págs. 81-82.

consumo de la Asociación "está en un sistema de la AAA que ya no se utiliza y [del que] no se pueden imprimir reportes como el producido sobre el consumo de Atlantis, teniendo que ir mes por mes para ver la información correspondiente".[8]

Atendida la solicitud de Atlantis, el Tribunal de Primera Instancia la declaró "no ha lugar" y celebró la vista en su fondo el 13 de noviembre de 2014, como estaba previsto. Así, y luego de aquilatar la prueba testifical y documental, el foro de instancia emitió su Sentencia el 21 de enero de 2015.[9] Con su determinación, el tribunal de instancia declaró "con lugar" la demanda de cobro de dinero y ordenó que Atlantis pagara $111,242.16 a la Asociación.[10] El foro de instancia consignó las determinaciones de hechos siguientes:

1. Para el 15 de marzo de 2004, aproximadamente, el Centro Renal Atlanti[s] Health Care comenzó operaciones en la Torre Médica San Pablo, en aquel tiempo conocido como Torre San Pablo del Este. Atlanti[s] era propietario de las oficinas 101 a la 107, en donde opera un centro de diálisis.

2. Para principios del 2011, la Asociación de Condómin[o]s hizo investigación de su consumo de

---

[8] *Moción solicitando conversión de señalamiento de vista en su fondo*, Solicitud de *certiorari*, págs. 83-84.

[9] Una copia de la notificación de la Sentencia se archivó en autos el 23 de enero de 2015.

[10] La cantidad reclamada en la demanda ascendía a $151,855. No obstante, el Tribunal de Primera Instancia determinó que se debía sustraer $8,147.46 que Atlantis Health Care Group (Puerto Rico), Inc. (Atlantis) había pagado y $32,465.38 por un crédito que concedió la Autoridad de Acueductos y Alcantarillados (AAA) a la Asociación de Condóminos de la Torre Médica HIMA San Pablo de Fajardo (Asociación). Véase *Sentencia del Tribunal de Primera Instancia*, Apéndice de la Solicitud de *certiorari*, pág. 101.

agua ya que consideraban que su factura de agua era muy alta.

3. En aras de disminuir la factura, la Asociación cambió las mezcladoras de los baños de la torre, pero aun así la factura de agua continuó llegando muy alta.

4. La factura de agua de la torre llegaba de $3,000 a $4,000 mensualmente.

5. La administración de la torre se dio a la tarea de verificar los contadores de la torre y luego de realizar unas pruebas a los mismos, concluyeron que por error la Asociación estaba pagando la factura de agua correspondiente al contador de Atlanti[s] y Atlanti[s] estaba pagando la factura correspondiente al contador del estacionamiento Multipisos de la torre.

6. El contador de agua del estacionamiento Multipisos de la torre y el de Atlanti[s] estaban juntos. Uno de los contadores tenía la información mutilada.

7. Desde el año 2004, Atlanti[s] está pagando la cantidad de 93.15 mensuales por su servicio de agua y alcantarillados de su centro renal ubicado en la Torre Médica HIMA San Pablo hasta que se realizó el cambio por parte de la AAA.

8. Atlanti[s] estuvo utilizando el mismo contador de agua desde que comenzó a operar en el año 2004.

9. Esta situación fue notificada a la AAA quien visitó la torre y verificó los contadores en marzo de 2011.

10. En marzo de 2011, la AAA informó a la Asociación que abonara mensualmente la suma de $1,000.00 de cada factura en lo que se hacían las correcciones.

11. La AAA cambió el contador mutilado para junio de 2011.

12. La AAA no leyó los contadores, luego del cambio hasta noviembre de 2011.

13. En el mes de noviembre, la AAA hizo la primera lectura de los contadores con la corrección correspondiente y comenzó a facturar a cada una de las partes por su respectivo consumo.

14. Durante el tiempo que los contadores estuvieron invertidos, la Asociación de Condóminos estuvo pagando el consumo de agua de la demandada, y la

demandada estuvo pagando el consumo de agua del estacionamiento Multipisos de la Torre Médica HIMA San Pablo.

15. Se informó a Atlanti[s] y se requirió una reunión con su Presidente en la reunión de la Asociación de Condómin[o]s. Nunca se pudo obtener la reunión con el Presidente de Atlanti[s].

16. El 19 de diciembre de 2014, la AAA le otorga un ajuste en crédito a la cuenta número 21885734 perteneciente a la Asociación, por la cantidad de $32,465.38 correspondiente a las facturas de marzo de 2011 hasta la lectura de los contadores en noviembre de 2011.

17. La Junta de Condóminos, a través de su representación legal, cursó carta a Atlanti[s] el 23 de mayo de 2012. En dicha carta, la Asociación le reclamó a Atlanti[s] la cantidad de $151,855.00, por haberlo pagado a la AAA y este haber disfrutado del servicio de agua que la Asociación pagó.

18. En respuesta a la carta del 23 de mayo de 2012, Atlanti[s] el 11 de junio de 2012, a través de su representación legal, aceptó que la Asociación pagó erróneamente la cantidad de $151,855.00 en beneficio de Atlanti[s], pero que habían resuelto la situación directamente con la AAA ya que la agencia les había concedido un plan de pago de 12 meses para cubrir la deuda.

19. Atlanti[s] no realizó gestión alguna con la AAA en el periodo comprendido del 17 de marzo de 2004 al 21 de octubre de 2011 para investigar la razón por la cual se facturaba un consumo de agua que no estaba atemperado a su realidad de negocio.

20. Durante el periodo comprendido en esta reclamación, la parte demandante pagó la cantidad de $151,855.00 por el consumo y servicio de agua del cual solo se benefició Atlanti[s]. Este pago se realizó desde el mes de marzo de 2004 al mes de octubre del 2011 y Atlanti[s] nunca se opuso al mismo.

21. Entre el periodo comprendido del 17 de marzo de 2004 y el 21 de octubre de 2011, los sistemas de contabilidad de Atlanti[s] reflejan que ésta pagó la cantidad de $8,147.46 a la AAA por el agua consumida por la Asociación.[11]

---

[11] *Sentencia del Tribunal de Primera Instancia*, Apéndice de la Solicitud de *certiorari*, págs. 94-96.

En síntesis, el tribunal de instancia determinó que la Asociación tiene derecho al reembolso de la parte que pagó a la AAA sobre una obligación que le correspondía a Atlantis. Ello debido a que aplica la figura del pago por tercero dispuesta en el Art. 1112 del Código Civil, 31 LPRA sec. 3162. Manifestó que "lo único que el tribunal tiene que concluir es que si en efecto la demandada no pagó la cantidad reclamada a su acreedor, y [que] fue la demandante quien la satisfizo. Según lo antes discutido, la situación de autos representa una situación clásica de pago por tercero".[12]

Inconforme con la decisión del foro de instancia, Atlantis solicitó reconsideración el 9 de febrero de 2015, mas dicho tribunal declaró "no ha lugar" la petición el 4 de marzo de 2015.[13] Ante esto, el 15 de abril de 2015 Atlantis recurrió ante el Tribunal de Apelaciones para solicitar la revocación de la Sentencia dictada. Luego de considerar los alegatos de las partes, el foro apelativo intermedio emitió una Sentencia confirmatoria el 28 de julio de 2015.[14]

Insatisfecha con la decisión del Tribunal de Apelaciones, el 3 de septiembre de 2015 Atlantis presentó

---

[12] *Sentencia del Tribunal de Primera Instancia*, Apéndice de la Solicitud de *certiorari*, págs. 99-100.

[13] Una copia de la notificación de la Resolución se archivó en autos el 17 de marzo de 2015.

[14] Una copia de la notificación de la Sentencia se archivó en autos el 5 de agosto de 2015.

el recurso de *certiorari* que hoy atendemos y en el cual nos plantea los señalamientos siguientes:

1. Erró el Tribunal de Apelaciones al dar por bueno el que el Tribunal de Primera Instancia celebrara juicio y dictara Sentencia, pues al no convertir el señalamiento de juicio no permitió tener ante sí la propia prueba que ordenó a la AAA a producir, por lo que la Sentencia, ausente el cumplimiento de la referida Orden es prematura.

2. Erró el Tribunal de Apelaciones al interpretar el crédito de $32,465.38 concedido por la AAA a la Asociación, pues dicho crédito lo que implica es que de los $151,855.00 que había indudablemente pagado la Asociación a la AAA, realmente había consumido $119,389.62, y por ello el crédito de $32,465.38, con el que quedaba cien por ciento resarcida por el pago que erróneamente efectuó, como planteó Atlantis desde antes de radicarse la demanda. Por ello, también la Sentencia constituye un enriquecimiento injusto de la Asociación a cuenta del correlativo empobrecimiento de Atlantis.

3. La Sentencia cuya revisión se solicita erró al aplicar la doctrina de pago por tercero, máxime cuando ambas partes pagaron por un error ocasionado por la propia AAA, y quedó demostrado que Atlantis pagaba las facturas que recibía, desconocía que los contadores estaban invertidos y que la Asociación pagaba su verdadero consumo de agua y viceversa.

Expedimos el auto de *certiorari* y las partes presentaron sus respectivos alegatos. En vista de ello, estamos en posición de adjudicar la controversia ante nuestra consideración.

II

Solo abordaremos el tercer señalamiento de error (sobre el pago por tercero), pues con éste se dispone del recurso.

A.

En su Alegato, Atlantis indica que no aplica la doctrina de pago por tercero debido a que ambas partes pagaron como consecuencia de un error cometido por la AAA (la inversión de los contadores), por lo que la Asociación pagó sin el conocimiento y sin la aprobación de Atlantis y, además, pagó como consecuencia de ese error y no porque tuviera interés en el pago de la obligación. Ante esto, Atlantis plantea que no se dan los criterios para conceder algún remedio al acreedor (a su elección), ya fuera el reembolso o la subrogación.[15] En específico, argumenta que "[c]uando la Asociación pagó a la AAA por Atlantis, no tenía interés en el cumplimiento de la obligación de Atlantis con su factura de la AAA, sino que tenía interés en el cumplimiento de su propia obligación con su factura de la AAA; la Asociación no pagó de buen corazón, pagó por equivocación y fue debidamente acreditada por la AAA".[16]

Atlantis finaliza su Alegato expresando que en este caso el error lo cometió la AAA al instalar unos contadores invertidos, pero que de igual forma la AAA ya había resuelto la controversia con ambas partes: a través del acuerdo de pago con Atlantis y mediante la concesión de un crédito a la Asociación.[17]

---

[15] Alegato de la parte peticionaria, pág. 20.

[16] Íd., pág. 23.

[17] Íd.

Por su parte, la Asociación argumenta que sí aplica la figura del pago por tercero, por lo que tiene derecho al reembolso de la parte que pagó a la AAA sobre la obligación que le correspondía a Atlantis. Además, la Asociación indica que antes de que Atlantis se acogiera a un plan de pago con la AAA, ya le había notificado acerca del pago de $151,855 por servicios de agua y le había advertido que esa cantidad debía pagarse a la Asociación y no a la AAA.[18] Añade que el hecho de que Atlantis pagara a la AAA no le exime de responsabilidad con la Asociación.[19] En particular, expone que "[l]a parte quien paga a una parte que ya no tiene derecho sobre esa reclamación no la exime de la deuda contraída con la persona que pagó su deuda y exige el reembolso de la misma. Este escenario retrata la situación de autos".[20]

Asimismo, la Asociación argumenta que siendo el tercero que pagó por otro, entonces le corresponde escoger contra quién reclamará las partidas pagadas, ello independientemente de que Atlantis acordara un plan de pago con la AAA.[21]

1.   **El pago o cumplimiento de la obligación**

En nuestro ordenamiento jurídico, el pago o cumpli-

---

[18] Alegato de la parte recurrida, pág. 20.

[19] Íd.

[20] Íd., pág. 21.

[21] Íd., pág. 22.

miento es una las formas en que se extinguen las obligaciones.[22] Al respecto, el tratadista español José Puig Brutau expone que "[l]a consecución de la finalidad a que responda la obligación implica, la terminación de la misma como vínculo jurídico, por carecer entonces de razón de ser. Por ello es la más importante de las causas de extinción de la relación obligatoria".[23]

Mientras, el jurista español Federico Puig Peña define "pago" como "el total cumplimiento de la prestación, llevado a cabo por el deudor con ánimo de extinguir el vínculo obligatorio".[24]

Por su parte, el Catedrático de Derecho Civil y jurista español Diego Espín Cánovas expresa que "[s]e entiende por pago o cumplimiento de la obligación la exacta realización de la prestación debida al acreedor. Por consecuencia, el cumplimiento produce la extinción de la obligación, siendo el modo más normal de extinguirse ésta y, asimismo, el modo satisfactorio por excelencia, es decir, el que produce mejor el logro del interés del acreedor…".[25]

---

[22] Art. 1110 del Código Civil, 31 LPRA sec. 3151.

[23] J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed. rev., Barcelona, Ed. Bosch, 1987, T. I, Vol. II, pág. 241.

[24] F. Puig Peña, Compendio de Derecho Civil español, 3ra ed. rev., Madrid, Ed. Pirámide, 1976, T. III, pág. 264.

[25] D. Espín Cánovas, Manual de Derecho Civil español, 6ta ed. rev., Madrid, Ed. Revista de Derecho Privado, 1983, Vol. III, pág. 125.

En palabras de los tratadistas Luis Díez-Picazo y Ponce de León, y Antonio Gullón Ballesteros, el "pago" o "cumplimiento" es:

> el acto de realización de una prestación debida en virtud de una relación obligatoria. El pago es, en primer lugar, un acto de cumplimiento del deber jurídico o deuda que sobre el deudor pesa. El pago es, en segundo lugar, la manera normal que el deudor tiene de liberarse de la obligación (*solutio*). El pago es, finalmente, la forma de satisfacer el derecho y el interés del acreedor.
>
> Es pago toda realización de la prestación debida (entrega de suma de dinero, de cosas específicas o genéricas, realización de servicios o adopción de simples omisiones). En términos generales, el pago es un comportamiento del deudor, que se ajusta al programa o proyecto establecido en el acto de constitución de la relación obligatoria.
>
> El pago es un simple acto jurídico y, más concretamente, lo que algún sector de la doctrina ha llamado un «acto debido».[26]

Díez-Picazo y Ponce de León, exmagistrado del Tribunal Constitucional de España, señala también que "[l]a calificación de un acto como pago exige no sólo la voluntad de llevar a cabo un acto de cumplimiento (*animus solvendi*), sino también su objetivo fundamento en la preexistencia de la obligación que se cumple (*causa solvendi*)".[27] Añade que el "pago" es un acto que despliega una función solutoria y

---

[26] L. Díez-Picazo y Ponce de León y A. Gullón Ballesteros, Instituciones de Derecho Civil, Madrid, Ed. Tecnos, 1974, Vol. I, pág. 383. Véase, además, L. Díez-Picazo y Ponce de León, Fundamentos de Derecho Civil patrimonial, 6ta ed., Navarra, Ed. Aranzadi, 2008, Vol. II, págs. 542-543.

[27] Díez-Picazo y Ponce de León, Fundamentos de Derecho Civil patrimonial, op. cit., pág. 587.

que encuentra su causa en la existencia de una previa obligación.[28]

Mientras, José Castán Tobeñas, jurista y expresidente del Tribunal Supremo de España, discute tres acepciones para el término "pago" y su equivalente "cumplimiento", pero manifiesta que el Código Civil español admite de forma implícita la acepción de que el pago es "el cumplimiento efectivo de la prestación convenida".[29]

En cuanto a los requisitos para que se configure el "pago", el profesor Espín Cánovas enumera los siguientes: (1) la existencia de una obligación que pueda ser pagada; (2) la intención de extinguir la obligación por medio del pago (*animus solvendi*), y (3) la efectiva y exacta realización de la prestación.[30] En iguales términos se refiere el tratadista Puig Peña a los elementos esenciales que caracterizan el pago.[31]

Por su parte, el Dr. Jorge Bustamante Alsina, profesor de Derecho Civil de la Universidad de Buenos Aires, indica que el "pago" o "cumplimiento" configura un acto jurídico que tiene los siguientes elementos: (1) la causa fuente: relación jurídica preexistente; (2) el sujeto activo: *solvens*; (3) el sujeto pasivo: *accipiens*;

---

[28] Díez-Picazo y Ponce de León, Fundamentos de Derecho Civil patrimonial, op. cit., págs. 587-588.

[29] J. Castán Tobeñas, Derecho Civil español, común y foral, 16ta ed. rev., Madrid, Ed. Reus, 1992, T. III, pág. 408.

[30] Espín Cánovas, op. cit., pág. 127.

[31] Puig Peña, op. cit., pág. 264.

(4) el objeto: identificado con el objeto debido, y (5) la causa fin: *animus solvendi*, o sea, el fin perseguido de extinguir el vínculo.[32]

## 2.   El "tercero" para fines del pago o cumplimiento de la obligación

En Figueroa Robledo v. Rivera Rosa, 149 DPR 565 (1999), acogimos la definición del jurista español Manuel Albaladejo con relación a que un "tercero" es aquel que no está ligado al deudor por una relación contractual o por algún vínculo convencional que establezca la obligación cumplida.[33]

Por su parte, Rodrigo Bercovitz y Rodríguez Cano, y Etelvina Valladares Rascón, Catedráticos de Derecho Civil de la Universidad Autónoma de Madrid, definen "tercero" como aquel que "sin tener ninguna obligación de pagar (ni frente al acreedor, ni frente al deudor), proced[e] voluntariamente a hacerlo".[34]  Asimismo, señalan que es aquel con total autonomía frente al deudor y que paga voluntariamente deudas ajenas.[35]

---

[32] J. Bustamante Alsina, Repetición del pago de lo que no se debe, Buenos Aires, Ed. Abeledo-Perrot, 1981, pág. 39.

[33] Véase Figueroa Robledo v. Rivera Rosa, 149 DPR 565, 576 esc. 7 (1999), citando a M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Edersa, 1991, T. XVI, Vol. I, pág. 23.

[34] R. Bercovitz y Rodríguez Cano y E. Valladares Rascón, Comentarios al Código Civil y compilaciones forales, dirigidos por Manuel Albaladejo y Silvia Díaz Alabart, Ed. Revista de Derecho Privado, 1991, T. XVI, Vol. I, pág. 23.

[35] Bercovitz y Rodríguez Cano y Valladares Rascón, op. cit., pág. 23.

## 3. **El concepto general de la figura del pago por tercero**

El Art. 1112 del Código Civil, 31 LPRA sec. 3162, regula la figura del pago por tercero. Dicho artículo dispone lo siguiente:

> Puede hacer el pago cualquier persona, tenga o no interés en el cumplimiento de la obligación, ya lo conozca y lo apruebe, o ya lo ignore el deudor.
>
> El que pagare por cuenta de otro podrá reclamar del deudor lo que hubiese pagado, a no haberlo hecho contra su expresa voluntad.
>
> En ese caso sólo podrá repetir del deudor aquello en que le hubiera sido útil el pago.

Según hemos expresado, el pago por tercero origina unas consecuencias jurídicas según los distintos supuestos esbozados en nuestro Código Civil.[36] En Eastern Sands, Inc. v. Roig Comm. Bank, 140 DPR 703, 713 (1996), manifestamos que, en la mayoría de los casos, el pago extingue la obligación principal y con ella mueren las garantías accesorias. Añadimos que, no obstante, cuando un tercero realiza el pago, ello puede provocar la subrogación de éste en los derechos del acreedor original y cuando esto ocurre la obligación y sus garantías no se extinguen.[37]

Conforme al Art. 1164 del Código Civil, 31 LPRA sec. 3248, el pago por tercero conlleva la subrogación del que paga en los derechos del acreedor cuando: (1) un acreedor paga a otro acreedor preferente; (2) el que

---

[36] Figueroa Robledo v. Rivera Rosa, supra, pág. 576.

[37] Eastern Sands, Inc. v. Roig Comm. Bank, 140 DPR 703, 713 (1996).

paga no tiene interés en el cumplimiento de la obligación, pero cuenta con la aprobación expresa o tácita del deudor, y (3) cuando quien paga tiene interés en el cumplimiento de la obligación.[38]

En cuanto a las consecuencias jurídicas, en caso de que el tercero pague con conocimiento y aprobación del deudor, sea de manera expresa o tácita, o pague porque tiene interés en el cumplimiento de la obligación, entonces el tercero tiene una acción de reembolso contra el deudor o, según su elección, podrá compeler al acreedor a que le subrogue en sus derechos.[39]  En caso de que el tercero pague, ignorándolo el deudor, la única acción posible es el reembolso contra el acreedor.  Mientras, en los casos en que un tercero pague contra la expresa voluntad del deudor, carece de la acción de reembolso y sólo tiene contra el deudor una acción de repetición con relación a aquello que dicho pago haya enriquecido al deudor.[40]

En Figueroa Robledo v. Rivera Rosa, supra, pág. 575, reconocimos que el Art. 1112 del Código Civil, *supra*, sobre pago por tercero aplica "a las reclamaciones pecuniarias aun en aquellos casos en que la obligación o deuda satisfecha por el tercero es una obligación alimentaria

---

[38] Eastern Sands, Inc. v. Roig Comm. Bank, supra, pág. 714.

[39] Figueroa Robledo v. Rivera Rosa, supra, pág. 576.

[40] Figueroa Robledo v. Rivera Rosa, supra, pág. 577, citando a L. Díez-Picazo y Ponce de León y A. Gullón Ballesteros, Sistema de Derecho Civil, 3ra ed., Madrid, Ed. Tecnos, 1982, Vol. II, pág. 250 y ss.

con la que el verdadero deudor ha incumplido". Específicamente, allí atendimos la figura del pago por tercero en una controversia surgida entre excónyuges debido al incumplimiento de un padre respecto a su obligación de alimentar a sus hijos menores de edad y el tipo de acción que surge a favor del otro padre que sufragó la totalidad de los gastos de alimentos.

## 4. El "animus solvendi" en el cumplimiento del tercero

En una Sentencia emitida por el Tribunal Supremo español el 26 de noviembre de 1926, dicho foro se expresó en estos términos:

> Quinto: Porque se infringe el artículo 1.158 del Código Civil por aplicación indebida al decir la Sala que el demandante al prestar los servicios de transporte de 1906 a 1910 lo hizo pagando por cuenta de las compañías al amparo del citado precepto, lo cual es de todo punto inexacto, porque para pagar por otro, precisa la voluntad de hacerlo así, según se desprende de la misma naturaleza del acto y de la jurisprudencia consignada, entre otras, en sentencias de 3 de Julio de 1906, 1ro de Julio de 1904 y 7 de Enero de 1901, y tal voluntariedad resulta evidente que no existió, porque así lo afirma la propia Sala al establecer, en armonía con la realidad de los hechos y los dichos del recurrido, que éste no tuvo intención de moverse en interés de otro con ánimo de obligarle, y que procedió con error. (Énfasis nuestro).[41]

Sobre esa Sentencia del Tribunal Supremo español, Puig Brutau manifiesta lo siguiente:

> El acto del tercero que haya pagado por error queda al margen de lo establecido por el art. 1.158 del Código civil [Art. 1112 de nuestro Código Civil]. En el caso resuelto por la sentencia de 26 de noviembre de 1926 (Jurisprudencia Civil, tomo 90, p. 580), el actor, obligado a transportar la correspondencia postal de una población marítima, no tenía que hacerlo con la correspondencia procedente

---

[41] STS 26 de noviembre de 1926.

de los vapores de las compañías demandadas, a pesar de lo cual lo había hecho por error durante cuatro años. El Tribunal Supremo estimó que el art. 1.158 no era aplicable porque <u>el pago no se hizo ni en nombre ni por cuenta de otro, requisito esencial para que puedan ser ejercitas las acciones nacidas del pago hecho por un tercero</u>. (Énfasis nuestro).[42]

Díez-Picazo y Ponce de León, Catedrático de Derecho Civil y exmagistrado del Tribunal Constitucional de España, plantea que "el hecho de pagar «en nombre del deudor» o el de pagar «por cuenta del deudor» es tomado en consideración por los arts. 1158 y 1159 [Arts. 1112 y 1113 de nuestro Código Civil], en relación con los derechos que pueden concederse a los terceros que cumplen la prestación; y ello significa que en uno y otro caso tendrán que <u>existir el *animus solvendi*</u> y la dirección del acto de prestación a la realización de la prestación". (Énfasis nuestro).[43]

Al referirse al Art. 1.158 del Código Civil español (Art. 1112 de nuestro Código Civil), que permite el pago por tercero, el tratadista Castán Tobeñas expresa que "[s]e habla de una legitimación *solvendi causa* que ha de ser ejercitada en condiciones tales que supongan <u>la inequívoca y manifiesta intención de extinguir la relación obligatoria en que se interviene.</u> De aquí que se exija un *animus solvendi* o voluntad de pagar por el deudor". (Énfasis nuestro).[44]

---

[42] Puig Brutau, <u>op. cit.</u>, pág. 251.

[43] Díez-Picazo y Ponce de León, <u>Fundamentos de Derecho Civil patrimonial</u>, <u>op. cit.</u>, pág. 553.

[44] Castán Tobeñas, <u>op. cit.</u>, págs. 412-413.

El Dr. Ángel Cristóbal Montes, Catedrático Emérito de Derecho Civil de la Universidad de Zaragoza, manifiesta lo siguiente respecto al *animus solvendi*:

> Si no hay intención de cumplir, no puede hablarse de pago por tercero, porque, tal como advierte el autor recién citado [Alfonso Hernández Moreno], la legitimación *solvendi causa* (toda persona puede pagar y extinguir la deuda de otro) «ha de ser ejercitada en condiciones tales que supongan la inequívoca y manifiesta intención de extinguir la relación obligatoria en la que se interviene». La explicación es muy sencilla: el tercero, a diferencia de lo que ocurre con el deudor, no está vinculado en la relación obligatoria y, por tanto, si se prescinde de su *animus solvendi*, se pierde también todo punto de referencia y aun de justificación respecto a su incidencia en el débito ajeno. (Citas omitidas y énfasis nuestro).[45]

En palabras del Dr. Juan Carlos Palmero, profesor de Derecho Civil y Comparado de la Universidad Nacional de Córdoba en Argentina, "[e]l tercero, por no estar ligado por una relación jurídica previa con el acreedor, debe exteriorizar su voluntad de manera distinta que la del deudor. Además, el tercero no está sometido a ninguna presión sicológica de incumplimiento, y su deliberación nace como acto espontáneo y plenamente libre que permite que se configuren los extremos necesarios para que exista realmente voluntariedad".[46]

## III

En este caso debido a un error en la conexión de los

---

[45] Á. Cristóbal Montes, El pago o cumplimiento de las obligaciones, Madrid, Ed. Tecnos, 1986, pág. 51.

[46] J.C. Palmero, El cumplimiento por el tercero, Buenos Aires, Ed. Depalma, 1973, págs. 72-73. El Código Civil argentino reconoce la figura del pago por tercero en sus Arts. 626, 727 y 728.

contadores del servicio de agua, la Asociación pagó -durante el período de 2004 al 2011- por el consumo de Atlantis[47] y ésta última pagó lo correspondiente al estacionamiento multipisos de la Torre Médica HIMA San Pablo de Fajardo.

Luego, la AAA le cobró a Atlantis la cantidad que la Asociación había pagado ($151,855) y acordó un plan de pago que Atlantis cumplió en su totalidad.[48] Según el testimonio de la Sra. Brenda Gauthier Rivera (Gerente de contabilidad de Atlantis) en la vista en su fondo, la AAA envió una carta de cobro a Atlantis y ésta determinó realizar un plan de pago con la corporación pública debido a que ésta es la entidad que suple el agua y a "[la] que se le paga el agua en este [P]aís".[49] Añadió la señora Gauthier Rivera que la AAA le advirtió a Atlantis que "la compañía pagaba, hacía el plan de pago, o [les] cortaban el servicio de agua".[50]

No obstante, ya iniciado el plan de pago, la Asociación le requirió a Atlantis el pago de la mencionada cantidad bajo el fundamento de que se trató de un pago por

---

[47] Esto según fue admitido en la vista en su fondo por la propia AAA a través del testimonio del Sr. Miguel A. Luciano Román, entonces Director Auxiliar de Servicio al Cliente. *Transcripción de la vista en su fondo*, Apéndice de la Solicitud de *certiorari*, págs. 338-339.

[48] Véanse *Carta de Atlantis a la Asociación de 11 de junio de 2012*, Solicitud de *certiorari*, pág. 129; *Acuerdo de plan de pago*, Solicitud de *certiorari*, págs. 130-131. Véase, además, *Transcripción de la vista en su fondo*, Solicitud de *certiorari*, págs. 292, 293, 298, 322 y 323.

[49] *Transcripción de la vista en su fondo*, Solicitud de *certiorari*, pág. 298.

[50] *Transcripción de la vista en su fondo*, Solicitud de *certiorari*, pág. 298.

tercero y Atlantis se benefició de los pagos efectuados por la Asociación.

El Tribunal de Apelaciones concluyó que el foro de instancia aplicó correctamente la figura del pago por tercero "toda vez que el pago de una obligación puede efectuarse por cualquier persona, tenga interés o no en la misma, en este caso la Asociación. Además, el tercero puede pagar la obligación, ya lo conozca, lo apruebe o lo ignore el deudor, en este caso, Atlantis. La norma establece que el que paga por cuenta de otro podrá reclamar del deudor lo que hubiese pagado, siempre y cuando no lo haya hecho contra la expresa voluntad del deudor".[51]

Como mencionamos, para que se configure el pago o cumplimiento de una obligación, se requiere: (1) la existencia de una obligación que pueda ser pagada; (2) la intención de extinguir la obligación por medio del pago (*animus solvendi*), y (3) la efectiva y exacta realización de la prestación.[52] Particularmente, en el pago por tercero se exige de ese tercero la inequívoca y manifiesta intención de extinguir la relación obligatoria en que se interviene, esto es que tiene que existir el *animus solvendi* o la voluntad de pagar por el deudor.[53]

---

[51] *Sentencia del Tribunal de Apelaciones*, Solicitud de *certiorari*, pág. 34.

[52] Espín Cánovas, op. cit., pág. 127.

[53] Castán Tobeñas, op. cit., págs. 412-413.

En el caso de referencia claramente la prueba demuestra que la Asociación no pagó a la AAA con la voluntad de pagar por Atlantis, esto es, no hubo *animus solvendi*. Esto sencillamente se reduce a lo siguiente: la Asociación pagó a la AAA bajo el entendido de que estaba pagando la factura correspondiente a su consumo del servicio de agua. O sea, durante todos los años en cuestión la Asociación hizo los pagos a la AAA con la intención de saldar lo que entendía era su propia deuda y no la de un tercero. Ante esto, no aplica el Art. 1112 del Código Civil, *supra*, sobre pago por tercero, ello debido a que en este caso el pago no se hizo ni en nombre ni por cuenta de otro, lo que constituye un requisito esencial para que pueda ejercitarse una acción surgida del pago por un tercero. Erró el foro apelativo intermedio al aplicar la figura del pago por tercero a los hechos de este caso.

IV

Por los fundamentos antes esbozados, se revocan las determinaciones de los tribunales recurridos. En consecuencia, procede la desestimación de la demanda presentada por la Asociación de Condóminos de la Torre Médica HIMA San Pablo de Fajardo.

Se dictará sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asociación de Condóminos de la
Torre Médica HIMA San Pablo

     Recurrida

                        CC-2015-763     Certiorari
       v.

Atlantis Health Care Group

     Peticionaria


SENTENCIA


San Juan, Puerto Rico, a 15 de febrero de 2018.

Por los fundamentos expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se revocan las determinaciones de los tribunales recurridos. En consecuencia, procede la desestimación de la demanda presentada por la Asociación de Condóminos de la Torre Médica HIMA San Pablo de Fajardo.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite Opinión de Conformidad. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita. El Juez Asociado señor Martínez Torres disiente y hace constar la siguiente expresión:

> "Es prematuro discutir la figura de pago por tercero en este caso. Previo a emitir su sentencia, el Tribunal de Primera Instancia debió evaluar la prueba que le requirió a la AAA en relación a los pagos realizados por las partes, y al cómputo del crédito de $32,465.38 que fue otorgado a la Asociación luego de que se corrigiera el error de facturación".

El Juez Asociado señor Colón Pérez hace constar las siguientes expresiones:

"Disiento del curso de acción seguido por una mayoría de este Tribunal en el presente caso.

En el mismo, allá para el año 2011 la Asociación de Condóminos de la Torre Médica HIMA San Pablo de Fajardo (en adelante, "la Asociación de Condóminos") realizó una investigación en aras de disminuir la factura por consumo de agua del referido edificio, pues la misma rondaba entre $3,000.00 a $4,000.00 mensuales. Luego de realizarse la correspondiente investigación, la Asociación de Condóminos descubrió que estaba pagando por el consumo de agua de la Corporación Atlantis Health Care Group (en adelante, "Atlantis"), que operaba un establecimiento que brindaba servicios de diálisis en el mencionado edificio. Ello pues, los contadores de los respectivos establecimientos se encontraban próximos y uno de ellos tenía la información mutilada, por lo que la Autoridad de Acueductos y Alcantarillados (AAA) estaba facturando erróneamente. Es decir, la Asociación de Condóminos estaba pagando el consumo de agua de Atlantis y, a su vez, Atlantis estaba pagando por el consumo de agua de la referida asociación. Esta información le fue notificada a la AAA, quien, en marzo de 2011, visitó la Torre Médica HIMA y verificó los contadores, percatándose de los señalamientos realizados por la Asociación de Condóminos. Así pues, la AAA le requirió a la referida asociación que abonara la cantidad de $1,000.00 mensualmente en lo que se hacían las correcciones.

Posteriormente, en junio de 2011 la AAA cambió los referidos contadores de agua, pero no fue hasta noviembre del mismo año que comenzó a realizar la lectura correspondiente y comenzó a facturar a las partes por su respectivo consumo. En el ínterin, la AAA le otorgó un ajuste de crédito a la cuenta de la Asociación de Condóminos, por la cantidad de $32,465.38, que al presente de los hechos no surge en concepto de qué se le concedió.

Así las cosas, la Asociación de Condóminos presentó, ante el Tribunal de

Primera Instancia, una demanda en cobro de dinero en contra de Atlantis. En su demanda, la Asociación de Condóminos alegó que el pago que realizó a la AAA constituyó un "pago por tercero", por lo que tenía derecho a recobrar de Atlantis lo que pagó por ella. Atlantis, por su parte, contestó la demanda y argumentó que la Asociación de Condóminos ya había sido compensada por la totalidad de la alegada deuda con el crédito que le concedió la AAA. Al respecto, Atlantis señaló que el crédito que la AAA le concedió a la Asociación de Condóminos fue luego de restarle el consumo de agua de la referida asociación durante el periodo que ésta pagó erróneamente. Es decir, que la cantidad de $32,465.38 que la AAA le otorgó como crédito a la Asociación de Condóminos, es el resultado de que se le restara a la suma de $151,855.00 que ésta pagó erróneamente, la cantidad $119,389.62 por su consumo de agua. Así pues, expresó que la mencionada asociación no tenía ninguna causa de acción. Además, señaló que solicitó un plan de pago a la AAA y se encontraba cumpliendo con el mismo, con el fin de satisfacer la deuda por su consumo de agua.

**Trabadas las controversias, el foro primario emitió una orden para que la AAA produjera varios documentos que demostraran el consumo de agua de ambas partes. No obstante, la AAA no cumplió con la orden e informó que el sistema que utilizan actualmente no permite dar un solo informe, sino que tenían que ir mes tras mes, desde el 2004 hasta el 2011.**

No empece a lo anterior, y sin contar con la documentación requerida a la AAA, el Tribunal de Primera Instancia dictó sentencia en la que declaró *ha lugar* la demanda presentada por la Asociación de Condóminos, pues concluyó que aplicaba la figura de pago por tercero.

Inconforme con dicho proceder, Atlantis acudió al Tribunal de Apelaciones. Dicho foro, luego de evaluar los alegatos de las partes, emitió una sentencia mediante la cual confirmó al foro primario.

Insatisfecha aún, Atlantis acude ante nos y señala, en síntesis, que el Tribunal de Apelaciones y el Tribunal de Primera Instancia

erraron al no ordenar a la AAA que produjera los documentos solicitados y al dictar sentencia aplicando la figura de pago por tercero. Le asiste la razón.

Como ha quedado claramente demostrado, el Tribunal de Primera Instancia ordenó a la AAA proveer información medular para la correcta disposición del presente caso. No obstante, la AAA no cumplió con lo ordenado. Ante ese escenario, a nuestro juicio, -- y previo a aplicar la doctrina de pago por tercero y dictar sentencia -- el foro primario debió asegurarse de que la AAA cumpliera con proveer los documentos solicitados por el Tribunal. Ello, sin lugar a dudas, hubiese colocado a dicho foro en una mejor posición para poder determinar **quién le debe a quién**, hecho esencial para poder disponer adecuadamente del caso de marras. Al no hacerlo así, entendemos que el Tribunal de Primera Instancia abusó de su discreción.

Siendo ello así, revocaríamos el dictamen emitido por el Tribunal de Apelaciones, que confirmó el dictamen del foro primario, y, en consecuencia, devolveríamos el caso al Tribunal de Primera Instancia con la instrucción de celebrar una vista a los fines de obtener la evidencia necesaria para una correcta disposición de las controversias llevadas ante su consideración".

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Condóminos de la
Torre Médica HIMA San Pablo

       Recurrida

          v.

Atlantis Health Care Group

       Peticionaria

CC-2015-763     *Certiorari*

Opinión de conformidad emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 15 de febrero de 2018.

Estoy conforme con el resultado alcanzado por estimar que en este caso no procede la causa de acción al amparo del Artículo 1112 del Código Civil, 31 LPRA sec. 3162. Examinada la doctrina científica y -- en calidad de derecho comparado -- las sentencias del Tribunal Supremo español, considero que el *animus solvendi*, en efecto, es un requisito indispensable para constituir la figura de pago por tercero.

I

El Artículo 1112 del Código Civil dispone que:

> Puede hacer el pago cualquier persona, tenga o no interés en el cumplimiento de la obligación, ya lo conozca y lo apruebe, o ya lo ignore el deudor.

**El que pagare por cuenta de otro** podrá reclamar del deudor lo que hubiese pagado, a no haberlo hecho contra su expresa voluntad.

En este caso sólo podrá repetir del deudor aquello en que le hubiera sido útil el pago. 31 LPRA sec. 3162 (énfasis suplido).

De la disposición precitada se coligen tres fundamentos de derecho muy puntuales: (1) cualquier persona puede pagar una deuda ajena; (2) el que paga por otro -- sin el conocimiento del deudor, o bien con su anuencia -- adquiere una acción de reembolso para recuperar el importe pagado; y (3) cuando el tercero paga en contra de la voluntad expresa del deudor, el tercero solo adquiere una acción de repetición contra el deudor por el importe que le fue útil. Por último, cabe señalar que para que el pago surta efectos subrogatorios, precisa concurrir otros requisitos.[54] Art. 1163 del Código Civil, 31 LPRA sec. 3247; Eastern Sands, Inc. v. Roig Comm. Bank, 140 DPR 703, 714-715 (1996).

Ahora bien, del Artículo 1112 también surge la siguiente interrogante: ¿Qué se entiende por *pagar por cuenta de otro*?

En 1926, el Tribunal Supremo español expuso que "para pagar por otro, **precisa la voluntad de hacerlo así**". STS 26 de noviembre de 1926 (énfasis suplido). Recientemente, al interpretar la figura de pago por tercero consagrada en el Artículo 1158 del Código Civil español, el Tribunal Supremo de España explicó que:

El artículo 1158 CC se refiere, en efecto, a la actuación de terceros no ligados por relación contractual o por relaciones derivadas de normas

---

[54] J. Puig Brutau y otros, Diccionario de acciones en Derecho Civil español, 3ra ed., Barcelona, Editorial Bosch, 2005, pág. 520.

> específicas, esto es, en la voluntad unilateral de una persona sin vínculo anterior con el deudor. **Esta persona (el tercero) ha de tener animus solvendi, la voluntad de pagar la obligación que vincula al deudor**: es lo que los artículos 1158 y 1159 CC designan con las expresiones "**pagar por cuenta**" o "**pagar en nombre**" del deudor. No se refiere a la preexistencia de un encargo, que puede haberlo o no, **sino a la voluntad de realizar el pago en el marco de la relación obligatoria que vincula al deudor**. STS 20 diciembre 2007 (énfasis suplido).

La glosa coincide con las sentencias del Tribunal Supremo español. Puig Brutau, por ejemplo, citando con aprobación la sentencia del Tribunal Supremo de España del 26 de noviembre de 1926, avala que el *animus solvendi* es un "**requisito esencial** para que puedan ser ejercitadas las acciones nacidas del pago hecho por un tercero". J. Puig Brutau, Fundamentos de Derecho Civil, 3ra ed. rev., Barcelona, Ed. Bosch, 1988, T. I, Vol. 2, pág. 251 (énfasis suplido). Además, explica que el Artículo 1158 del Código Civil español "se refiere a las personas que **voluntariamente pagan deudas ajenas**", y que este "regula la acción de reembolso para que el tercero reclame al deudor lo que realmente hubiera pagado **sabiendo que pagaba por otro**". J. Puig Brutau y otros, Diccionario de acciones en Derecho Civil español, 3ra ed., Barcelona, Editorial Bosch, 2005, pág. 521. Véase SSTS 5 de marzo de 2001, 30 de junio de 1966, 7 de febrero de 1956 y 26 de junio de 1925. Por su parte, Castán Tobeñas señala que "[s]e habla de una legitimación *solvendi* **causa que ha de ser ejercitada en condiciones tales que supongan la inequívoca y manifiesta intención de extinguir la relación obligatoria en que se**

**interviene**". J. Castán Tobeñas, <u>Derecho Civil español, común y foral</u>, 16ta ed. rev., Madrid, Ed. Reus, 1992, T. III, pág. 408 (énfasis suplido). Por último, Manresa ilustra que "[p]ara que se dé el supuesto del pago hecho por un tercero, **es preciso que quien lo realiza obre con intención de moverse en interés de otro, y no por error**". J. M. Manresa y Navarro, <u>Comentarios al Código civil español</u>, 6ta ed. rev., Madrid, Instituto Editorial Reus, T. VIII, Vol. 1, pág. 605.

II

De los motivos que originan la presente acción surge meridianamente que no existe una obligación legal entre la Asociación de Condóminos de la Torre Médica HIMA San Pablo de Fajardo y Atlantis Health Care Group. En particular, la Asociación no alegó ni probó que tenía intención alguna de intervenir en la relación jurídica entre la Autoridad de Acueductos y Alcantarillados (AAA) y Atlantis para pagar por esta última; entiéndase, para extinguir la obligación de Atlantis de pagar por su consumo de agua. Por tanto, el pago de la Asociación no cumplió con el criterio de *animus solvendi* porque no se entiende que pagó por cuenta de Atlantis.

Asimismo, un examen de los autos revela, en esencia, que la Asociación realizó una serie de pagos a la AAA con la intención de extinguir su obligación de pagar por su propio consumo de agua. La Asociación no disputa la existencia de una relación jurídico-patrimonial entre ella y la AAA. Tampoco niega que tenía la obligación de pagar por su consumo de agua. Alega, sucintamente, que pagó más de lo que realmente consumió

en virtud de una confusión que hubo con los contadores de agua; porque la AAA, mediante las facturas que le envió, le representó o le indujo a creer que sí lo consumió. Temo que, al llegar a este punto en mi análisis, me veo en la obligación de pausar, puesto que la AAA no es parte en el caso de autos, ni ha comparecido ante este Tribunal.

Por la fundamentación que antecede, concluyo que la causa de acción al amparo del Artículo 1112 del Código Civil, supra, no procede. Dado lo anterior, en este momento no es material pasar juicio sobre qué, si algo, la AAA le restituyó a la Asociación. Así, no habiendo reclamación ulterior contra Atlantis, procede necesariamente la desestimación de la demanda.

Maite D. Oronoz Rodríguez
Jueza Presidenta